UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-03072-SEB-TAB |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

# ORDER OVERRULING PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ADOPTING THE RECOMMENDATION AND AFFIRMING THE FINAL DECISION OF THE COMMISSIONER

Plaintiff James W. ("James") appeals the final decision of the Commissioner of the Social Security Administration ("SSA") denying his June 2, 2015, application for disability insurance benefits ("DIB"). R. (Dkt. 8) at 13. The application was initially denied on August 20, 2015, R. at 123, and upon reconsideration on January 28, 2016, R. at 133. The administrative law judge ("ALJ") conducted a hearing on March 15, 2018, R. at 57–81, and a supplemental hearing on July 10, 2018, R. at 33–54, resulting in a decision on August 15, 2018, that James was not disabled and thus not entitled to receive DIB, R. at 10, 14. The Appeals Council denied review on June 24, 2019, and the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

Commissioner's decision became final.  R. at 1.  On July 23, 2019, James timely filed this civil action seeking judicial review of that the decision pursuant to 42 U.S.C. § 405(g).  Dkt. 1.  The Court referred this matter to Magistrate Judge Baker, Dkt. 10, who, following the completion of briefing, submitted his Report and Recommendation on February 24, 2020, recommending that the decision of the Commissioner be affirmed, Dkt. 21.  The cause is now before the Court on the Plaintiff's timely filed Objection to the Magistrate Judge's Report and Recommendation.  Dkt. 22; 28 U.S.C § 636(b)(1)(B).

For the reasons outlined below, we overrule the objection to the Report and Recommendation and affirm the Commissioner's decision.

## **Background**[2]

James was 43 years of age when he filed the application under review.  *See* R. at 287.

The ALJ followed the five-step sequential evaluation set forth by the SSA, *see* 20 C.F.R. § 404.1520(a)(4)(i) to (v), in concluding that James was not disabled.  R. at 22.  Specifically, the ALJ found as follows:

- The ALJ found that James last met the insured status requirements of the Social Security Act on March 31, 2015 (his "date last insured").[3]  R. at 16.

---

[2] The relevant evidence of record is amply set forth in the parties' briefs as well as the ALJ's decision and need not be repeated here.  Specific facts relevant to the Court's disposition of this case are discussed below.

[3] James must prove the onset of disability on or before his date last insured to be eligible for DIB. *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131.  The ALJ's subsequent findings were limited to the period at issue, beginning with the alleged disability onset date, August 15, 2009, through the date last insured.  *See, e.g.*, R. at 16.  We note that James had also applied for supplemental security income ("SSI") at the time he filed the claim under review.  R. at 13.  On March 7, 2016, the SSA awarded James's SSI claim as of September 8, 2015, the date he had a cerebrovascular accident/stroke.  R. at 13, 143, and 145.  As such, James's appeal of the SSI claim

- At Step One, James had not engaged in substantial gainful activity[4] since August 15, 2009, the alleged disability onset date.  R. at 16.

- At Step Two, he "had the following severe impairments: Juvenile diabetes mellitus at times with hyperphosphate[m]ia/hyperkalemia; and seizures characterized as hypoglycemic-induced seizures."  R. at 16 (citation omitted).

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  R. at 17–18.

- After Step Three but before Step Four, James had the residual functional capacity ("RFC") "to perform light work, as defined in 20 CFR 404.1567(b), with limitations as follows: [n]ever climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; avoid all use of hazardous moving machinery; avoid all exposure to unprotected heights; and do no commercial driving[.]"  R. at 18.

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering James's RFC, he was capable of performing his past relevant work as a manager of a liquor establishment, restaurant manager, and bartender.  R. at 20.

- Even though the Step Four determination resulted in the conclusion that James was not disabled, in the alternative at Step Five, relying on the VE's testimony and considering James's age, education, work experience, and RFC, he was capable of making an adjustment to other work with jobs that existed in significant numbers in the national economy in representative occupations such as a general cashier, fast food worker, and hotel maid.  R. at 20–21.

---

was moot by the time of the ALJ's decision.  R. at 13.  However, because the award of that claim found disability was established as of only September 8, 2015, which is after James's DLI, his appeal of the denial of his DIB claim remained.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

## **Standard of Review**

"A district court may assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact." *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 760 (7th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)). "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it." *Schur*, 577 F.3d at 760 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). After a Magistrate Judge makes a Report and Recommendation, either party may object within fourteen days. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made" with respect to dispositive motions. 28 U.S.C. § 636(b)(1). Further, a judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Upon review of the Commissioner's decision,

> [w]e will uphold [it] if it applies the correct legal standard and is supported by substantial evidence. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). Our review is limited to the reasons articulated by the ALJ in her decision. *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010).

*Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).  In determining whether the decision was properly supported, we neither reweigh the evidence nor assess the credibility of witness, nor substitute our judgment for the Commissioner's.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

    James raised two errors on appeal, contending that the ALJ: (1) failed to evaluate the medical opinion of the medical expert, Dr. Lee A. Fischer, M.D., who testified at the request of the ALJ during the supplemental hearing, because the ALJ did not specifically address one aspect of Dr. Fischer's testimony given in response to a question from James's hearing representative, Dkt. 13 at 8–9, and (2) did not explain her conclusion that James's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the file, *id*. at 10–11.  The Magistrate Judge recommended that the Commissioner's final decision be affirmed, concluding that: (1) Dr. Fischer's testimony, taken in context, did not offer a medical opinion in response to the hearing representative's question, such that there was no conflict between Dr. Fischer's opinion and the ALJ's RFC finding, Dkt. 21 at 4–5, and (2) the ALJ's decision, read as a whole, did provide justifications for her subjective symptom evaluation that were not patently wrong—supported by citation to substantial evidence of record—that James's blood sugar levels responded well to treatment with placement of an insulin pump and there was evidence of noncompliance precipitating instances of suboptimal control, *id*. at 5–6.  James objects to only the Magistrate Judge's first conclusion that the relevant portion of Dr. Fischer's testimony—that was not addressed by the ALJ in the written decision—was not a medical opinion.  Dkt. 22.

5

After careful review, we overrule the objection. The relevant conclusion by the Magistrate Judge that the testimony in question was not a medical opinion correctly reflects the facts and the law applicable to James's claim. As such, we adopt the Magistrate Judge's Report and Recommendation.

## Analysis

The Seventh Circuit has explained that "[g]enerally speaking, an ALJ's 'adequate discussion' of the issues need not contain 'a complete written evaluation of every piece of evidence.'" *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart,* 395 F.3d 737, 744 (7th Cir. 2005)). However, the law requires that "evidence that comes in the form of a medical opinion" be given more attention by the ALJ. *McKinzey*, 641 F.3d at 891. According to the regulation applicable at the time that James filed his DIB claim, the SSA assures that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. 404.1527(c) (for claims filed before March 17, 2017). The SSA's own guidance also requires that the "RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *7.

The issue here is what constitutes a medical opinion to trigger the need for explicit evaluation by the ALJ in the written decision. James objects to the Magistrate Judge concluding without citation to the regulation defining a medical opinion that Dr. Fischer did not offer one on absenteeism. Dkt. 22 at 2.

According to regulation, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

The ALJ discussed the opinion of the medical expert, assigning "substantial weight" to Dr. Fischer's assessment. R. at 19. However, James contends that the ALJ erred by failing to specifically address one of Dr. Fischer's responses to a question posed by James's hearing representative. The Magistrate Judge's Report and Recommendation quoted the key, relevant portion of Dr. Fischer's testimony that included the response. Dkt. 21 at 4. And here, context matters. Prior to turning over questioning to James's representative, the ALJ asked Dr. Fischer to assess the work-related limitations that he thought were supported by his review of the record. R. at 41. Dr. Fischer assessed exertional, postural, and environmental limitations consistent with the ALJ's eventual RFC finding. R. at 41–42. Dr. Fischer was clear that he did not find any other limitations supported. R. at 42. He had not assessed any limitation concerning absenteeism.

Upon cross-examination, James's representative asked Dr. Fischer if James's testimony that he was "unable to function" or "out of commission" on average two days per month was reasonable based on the medical record. R. at 44. Dr. Fischer responded:

> It's not unreasonable if he were to have a seizure one or two days a month. Again, I can't say that, that the reason he would feel bad on those two days is because of his kidney disease, possibly the diabetes. All I can really say

7

>   is possibly, and you used [the] term it's not unreasonable.  No, I can't say
>   it's unreasonable, no.

*Id.*  James's representative then asked if it were unreasonable to think that James would have missed one to two days of work per month during the relevant period of time.  R. at 45.  The ALJ interjected to inquire as to the basis of the limitation and James's hearing representative clarified it was because of James "not feeling good as a result of his diabetes."  *Id.*  Dr. Fischer testified in response:

>   I can't say that.  And I don't think I, I saw that in the records during that
>   time period, so I don't know if there's any way to say that.  I mean people
>   can say I don't feel good, but I can't say that more likely than not it would
>   be related to his diabetes.  It's like people don't feel good sometimes for no
>   specific reason.

*Id.*  James's representative followed-up, "Let me ask it this way, would it be inconsistent with his records if he were to miss one day per month because of his diabetes during the relevant period?"  *Id.*  Dr. Fischer testified, "No. I can't say -- the way you phrased that question, I can't say, say anything other than no, it would not be, it would not be inconsistent."  *Id.*

Taken in context, Dr. Fischer did not offer a medical opinion about James's possible absenteeism.  Dr. Fischer did not affirmatively state that the records supported that James would not feel well because of his diabetes and miss one day of work per month.  He testified that he couldn't say one way or another.  To use the critical word from the regulatory definition of a medical opinion, Dr. Fischer did not make a *judgment* that the record supported one absence from work per month.  He indicated that he didn't see a definitive basis in the records to support such a limitation.  However, he conceded

that he could not definitively say that such a limitation was inconsistent with the records either. At most, Dr. Fischer made a judgment that the record was inconclusive as to whether such a limitation was supported. Accordingly, the ALJ's RFC finding—that did not include a limitation concerning absenteeism—did not conflict with Dr. Fischer's testimony.

The question then becomes whether the ALJ had any obligation to directly address the limited judgment made by Dr. Fischer that the record was inconclusive on the relevant point. James has provided the Court with a case analysis of Seventh Circuit authority that does not directly answer the question. *See* Dkt. 22 at 2–6. As James points out, *id.* at 6, we have previously declined to decide whether an observation about the results of pulmonary testing met the definition of a medical opinion. *House v. Berryhill*, 2018 WL 1556173, at *6 (S.D. Ind. Mar. 30, 2018). Commenting that such observations strained the regulatory definition, we described the legal landscape concerning the issue as ambiguous according to Seventh Circuit precedent interpreting the regulation for claims, such as this one, filed before the SSA's changes to the regulatory definition of a medical opinion went into effect. *Id.*; *see* 20 C.F.R. § 404.1513(a)(2) (definition of a medical opinion for claims filed beginning March 27, 2017, that does not apply here).

However, we conclude that the limited judgment made here by Dr. Fischer concerning absenteeism does not meet the applicable definition of a medical opinion. In a different context concerning clinical observations made by a consultative examiner, the Seventh Circuit has explained that when a medical source's "findings are equivocal and therefore not particularly supportive of either side in [the] controversy," and the medical

9

source has "failed to venture an opinion as to the extent of [the claimant's] limitations or as to his residual capabilities, the evidentiary usefulness of his findings is slight, at best." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).  Following the same rationale, we conclude that Dr. Fischer's limited judgment that the record was inconclusive was not significant enough to demand any specific examination by the ALJ in the written decision.

Furthermore, we conclude that even if it was error for the ALJ to omit addressing the relevant portion of Dr. Fischer's testimony, that error was harmless.  In *McKinzey*, the Seventh Circuit excused an ALJ's failure to address a portion of a medical opinion based on a finding that the harmless error standard was met.  641 F.3d at 891–92.  Harmless error is "prospective—can we say with great confidence what the ALJ would do on remand—rather than retrospective." *Id*. at 892.  Here, we find that another Seventh Circuit authority is informative.  In *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018), the court explained the limits as to what a testifying medical expert who has only reviewed the record can determine for the ALJ:

> These answers indicated honestly what seems obvious.  Having not even examined Plessinger, Dr. Pella was not in a position to evaluate the credibility of his account of the pain he suffered.  Dr. Pella was saying, in other words, that someone else—presumably the ALJ—would need to assess those issues to make a sound decision based on all the evidence in the case.  The ALJ cannot delegate to any doctor, and certainly not to a non-examining doctor, the task of evaluating the claimant's credibility.

As explained above and relevant to James's other assignment of error in his initial brief, Magistrate Judge Baker found that the ALJ adequately explained her conclusion that she did not find James's statements about the intensity, persistence, and limiting

10

effects of his symptoms to be credible. James has not objected to that conclusion in the Report and Recommendation. As such, we will not revisit the veracity of that finding.

We continue only to explain our view—based on Seventh Circuit precedent—that the ALJ's subjective symptom evaluation is relevant and applicable in filling any void from an omitted evaluation of the relevant portion of Dr. Fischer's testimony. Dr. Fischer declined to make any definitive judgment whether the record established an absenteeism limitation. When assertions regarding symptoms cannot be verified by objective medical evidence alone, the ALJ must make a credibility determination concerning the claimant's subjective reports. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). The basis of a limitation that James would need to miss one day of work a month because of seizures or not feeling well related to his diabetes is not something that could be objectively verified. At least, that is, based on the record in this case. With regard to what the record did show, the ALJ explained that she did not find James credible, in part, because there was evidence that his blood sugars were better controlled after an insulin pump was inserted. R. at 18. An ALJ is permitted to consider the effectiveness of treatment in making her credibility determination. 20 C.F.R. § 404.1529(c)(3)(iv); *see Lambert v. Berryhill*, 896 F.3d 768, 777 (7th Cir. 2018) (The ALJ's credibility determination relying on "good response" to treatment was not upheld because the finding was inconsistent with the record.). The ALJ also explained that there was evidence of noncompliance with doctor recommendations when James's blood sugar was not controlled because he continued to drink alcohol and soda. R. at 19 (The ALJ also relied on Dr. Fischer's testimony that such drinks would not be recommended for James because of his diabetes). An ALJ can

11

reasonably determine that a claimant's allegations are not credible when the claimant fails to follow treatment recommendations.  *See Dixon v. Massanari*, 270 F.3d 1171, 1179 (7th Cir. 2001) (discounting evidence of elevated blood sugar levels, in part, because of the claimant's failure to follow dietary recommendations).  Accordingly, we can determine with great confidence what the ALJ would do on remand if asked to specifically address the relevant portion of Dr. Fischer's testimony.  We find that the ALJ would conclude that a limitation concerning absenteeism was not credibly established by the record.

## Conclusion and Order

For the reasons explained above:  James's objection (Dkt. 22) is OVERRULED. The Report and Recommendation (Dkt. 21) is ADOPTED.  The Commissioner's decision is AFFIRMED. Final judgment shall issue by separate document.  Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date: 9/30/2020

*[signature]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov